**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X

SOLOMON BAKER-PAUL,

        Plaintiff,      **REPORT AND RECOMMENDATION**

  v.               19-cv-184 (DG) (ST)

MERRICK GARLAND, Attorney General
of the United States OF America,

        Defendants.
-----------------------------------------------------------X
**TISCIONE, United States Magistrate Judge:**

   Before this Court is a motion for summary judgment by Defendant pursuant to Federal

Rule of Civil Procedure 56. Plaintiff was employed as a corrections officer at the Metropolitan

Detention Center (the "MDC") in Brooklyn, NY during 2007-2008 and again from 2014-2016.

Plaintiff claims his former supervisor, Lieutenant Veronica Metzger's ("Lt. Metzger"), conduct

amounted to retaliation for refusing her sexual advances and created a hostile work environment

in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). Defendant denies any

violations. The Honorable Diane Gujarati referred the motion to me for a Report and

Recommendation.  For the reasons below, I recommend Defendants' motion be GRANTED in

part and DENIED in part.

**BACKGROUND[1]**

   Solomon Baker-Paul (the "Plaintiff") first began working at the MDC on March 4, 2007,

as a correctional officer where he was employed until December 6, 2008. E.D.N.Y. L.R. 56.1

---

[1] On a motion for summary judgement, I am required to draw all inferences and resolve all factual ambiguities on behalf of the nonmoving party, in this case the Plaintiff. *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012). As such, for the purposes of this statement on the factual background of this case, I accept Plaintiff's version of events as true.

1

Statement ¶¶ 1, 9, ECF No. 63. During that period, one of Plaintiff's colleagues, Veronica

Metzger, sought a sexual and romantic relationship with Plaintiff. *Id* at ¶ 3. Plaintiff refused

Metzger's advances, prompting her to use slurs in reference to the Plaintiff and question his

manhood. *Id*; Pl. Opp'n Br. 2, ECF No. 59. Plaintiff did not, however, report this conduct to

MDC officials or contact the Equal Employment Office ("EEO"). E.D.N.Y. L.R. 56.1 Statement

¶¶ 4, 5, ECF No. 63. Plaintiff then went on to work for the Pentagon Police, returning to the

MDC on August 26, 2014. *Id* at ¶¶ 7, 9, 15.

Plaintiff returned to the MDC as a Senior Corrections Officer and Metzger had been

promoted to Lieutenant, making her one of Plaintiff's superiors, supervising him "on and off"

each quarter. *Id* at ¶¶ 15, 30-31. While Plaintiff testified that he did not believe the environment

at MDC had changed and that he was happy to return, this was partly because he was better able

to care for his ailing mother by returning to New York. *Id* at ¶¶ 16, 17; Pl. Opp'n Br. 3, ECF No.

59. Lt. Metzger continued her advances towards Plaintiff and at one point entered the room

where Plaintiff was stationed, sat on the desk, spread her legs, and made a direct and explicit

offer for sex to Plaintiff. Pl. Opp'n Br. 4, ECF No. 59. When Plaintiff denied her advances, Lt.

Metzger again used sex-based and sexual orientation-based slurs against Plaintiff. *Id.*

Additionally, Lt. Metzger confiscated personal items belonging to Plaintiff, claiming they were

contraband. *Id.* The confiscation led to an MDC investigation that concluded without discipline

to either party. *Id*; E.D.N.Y. L.R. 56.1 Statement ¶¶ 35, 37, ECF No. 63.

Following this interaction Plaintiff continued to perceive Lt. Metzger's actions as

retaliation for refusing her advances. Plaintiff believed Lt. Metzger unfairly scrutinized his work

in an instance with orderlies and again while on dry duty, interfered with his attempts to contact

union representation, and called him on his personal cell phone to state "don't think I forgot the past and how you played me . . . . I don't take no for an answer." Pl. Opp'n Br., 4-5, 8-9.

Central to Plaintiff's complaint is Lt. Metzger's alleged interference with Plaintiff's Basic Prisoner Transport ("BPT") duties. BPT requires officers to leave the MDC in order to transport inmates to hospitals and nursing homes. E.D.N.Y. L.R. 56.1 Statement ¶ 19, ECF No. 63. Due to the hours required to transport inmates, attend the appointments, and transport back, officers performing BPT duties are often afforded additional overtime. *Id* at ¶ 20, ECF No. 63. Plaintiff was not assigned to a permanent BPT post and did not bid on such a post during the quarterly bidding process. *Id* at ¶¶ 24-25. However, Plaintiff was nonetheless assigned BPT duties regularly, and in one relevant period was assigned to BPT 63% of the time. *Id* at ¶¶ 26-27. Plaintiff claims that Lt. Metzger, and other staff friendly with Lt. Metzger, would refuse to assign Plaintiff to BPT, reassign his BPT duties to other officers, or call Plaintiff back from BPT early. *Id* at ¶ 20, ECF No. 63; Pl. Opp'n Br. 5, ECF No. 59.

Plaintiff documented what he believed to be retaliatory conduct in a series of emails and memorandum to his supervisors. In total, plaintiff authored over ten such correspondences between 2014 and 2016. Def. Br Exhibits D-O, ECF Nos. 58-4-58-15. Of these, only one dated March 25, 2016, explicitly complained of Lt. Metzger's sexual advances. E.D.N.Y. L.R. 56.1 Statement ¶¶ 53-54, ECF No. 63. Plaintiff maintains that MDC officials were copied on this letter on March 25, but Defendant claims its staff were not aware of Plaintiff's claims of sexual harassment until May 23, 2016. *Id* at ¶¶ 56, 64; Pl. Opp'n Br. 7-8, ECF No. 59. The complaint was then referred to the Department of Justice Office of Internal Affairs (the "DOJ") on May 25, 2016, which was subsequently deferred back to MDC in September of 2016. E.D.N.Y. L.R. 56.1 Statement ¶¶ 64-65, ECF No. 63. An MDC official conducted an initial interview with Plaintiff,

3

but Plaintiff later refused to schedule an additional interview and the investigation was closed. *Id*
at ¶¶ 66-69. Plaintiff left the MDC for a new position on November 26, 2016. *Id* at ¶ 63.

While the MDC investigation was pending, Plaintiff contacted an EEO counselor on
September 26, 2016. *Id* at ¶ 70. Plaintiff filed an administrative complaint on December 29,
2016. *Id* at ¶ 71. The complaint and subsequent appeal were denied on April 2 and August 29,
2016, respectively. *Id* at ¶ 72-73; Def. Br. Exhibit C, ECF No. 58-3. Plaintiff then brought this
case in the Eastern District of New York on January 9, 2019. *See* Pl. Am. Compl., ECF No. 22.
Defendant moved for summary judgment on March 4, 2022. Def. Motion for Summary
Judgment, ECF No. 55. Judge Gujarati then referred that motion to me for a Report and
Recommendation.

## LEGAL STANDARD

### I.    Summary Judgment Standard

Summary judgment is appropriate when the movant "shows that there is no genuine
dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.
Civ. P. 56(a).  An issue of fact is material if the fact "might affect the outcome of the suit under
the governing law…" *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986).  A genuine
dispute exists as to a material fact when "evidence is such that a reasonable jury could return a
verdict for the nonmoving party." *Id.*

On motions for summary judgment, the moving party bears the initial burden of
establishing the absence of a material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).
Once the moving party meets that burden, the non-moving party must then show there is a
genuine dispute for trial. *Id.*  The burdens on both parties as to the underlying elements are
aligned as they would be at trial. *Id.* at 254.

When considering a motion for summary judgment, the Court must construe "all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).

## II.    Title VII Standards

This Court applies the burden-shifting analysis established in *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973) to discrete act claims brought under Title VII. *Richardson v. New York State Dept. of Correctional Service*, 180 F.3d 426, 443 (2d Cir. 1999) (*abrogated on other grounds by Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)). Under this analysis:

> "the plaintiff must first demonstrate a *prima facie* case of retaliation, after which the defendant has the burden of pointing to evidence that there was a legitimate, nonretaliatory reason for the complained of action. If the defendant meets its burden, the plaintiff must demonstrate that there is sufficient potential proof for a reasonable jury to find the proffered legitimate reason merely a pretext for impermissible retaliation." *Id.*

Claims of hostile work environments are subject to a different standard. To succeed on such claims, a plaintiff must show that the "the harassment was 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003) (quoting *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir.2002)).

## DISCUSSION

Plaintiff's complaint alleges a campaign of sexual harassment against him, predominantly by one of his supervisors, Lt. Metzger. The alleged conduct began when Plaintiff declined Lt. Metzger's offers to enter into a romantic relationship with her during his first tour of duty with the MDC in 2007 and 2008. E.D.N.Y. L.R. 56.1 Statement ¶ 3, ECF No. 63; Pl. Opp'n Br. 2,

ECF No. 59. Plaintiff was employed at MDC in two periods, from 2007-2008 and 2014-2016.

E.D.N.Y. L.R. 56.1 Statement ¶¶ 1, 9, 15, 63 ECF No. 63. Plaintiff's complaint alleges that this

harassment violated Title VII of the Civil Rights Act of 1964 both as a series of discreet acts of

retaliation for his refusal to enter a relationship with Lt. Metzger as well as a hostile work

environment based on sex. Pl. Am. Compl. ¶ 40; ECF No. 22. I examine each claim in turn.

### I.      Plaintiff's Discreet Act Claims.

#### a.   Plaintiff's Time-Barred Claims.

Defendant argues that nearly all of Plaintiff's discreet act claims are time-barred. Under

29 C.F.R. § 1614.105(a)(1), an aggrieved federal employee who believes "they have been

discriminated against on the basis of … disability …must consult a[n] [EEO] Counselor prior to

filing a complaint…within 45 days of the effective date of the action." Plaintiff first contacted

and EEO counselor regarding the alleged harassment on September 26, 2016. E.D.N.Y. L.R.

56.1 Statement ¶ 70, ECF No. 63. Applying the 45-day bar, only events occurring on or after

August 12, 2016 may be considered in deciding Plaintiff's discreet act claims.

While Plaintiff concedes that this date is the correct cut-off date, Plaintiff nonetheless

asserts that his claims are timely because "from early 2015 until [Plaintiff] left the MDC in

November 2016, Metzger would regularly, on at least a weekly basis, either deny him [BPT], or

when on BPT, have him relieved." Pl. Opp'n Br. 12, ECF No. 59. In support of this, Plaintiff

filed an affidavit with his opposition memo to this motion for summary judgment attesting to the

frequency with which Metzger denied or reassigned Plaintiff's BPT duty. Pl. Opp'n Aff., ECF

No. 61. However, "[a] party may not create an issue of fact by submitting an affidavit in

opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's

previous deposition testimony." *Golden v. Merrill Lynch Co., Inc.*, No. 06 Civ. 2970 (RWS),

2007 WL 4299443, at *9 (S.D.N.Y. Dec. 6, 2007) (quoting *Raskin v. Wyatt Co.*, 125 F.3d 55, 63 (2d Cir.1997)). This remains the case even when "the purported new evidence would otherwise create a triable issue of fact." *Id* (citing *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir.2001)).

It is uncontested that Lt. Metzger supervised Plaintiff "a few times, 'on and off,' throughout each quarter." E.D.N.Y. L.R. 56.1 Statement ¶ 31, ECF No. 63. Supervisor and employee pairings at the MDC rotate often and when asked in his deposition to give a range for how often per quarter Lt. Metzger supervisor, Plaintiff answered "I can't give a range . . . . It's intermittent, on and off." Baker-Paul Dep., 75, ECF No. 61-1. Furthermore, when asked about how frequently he interacted with Lt. Metzger, apart from how often he was directly supervised by her, Plaintiff responded, "I can't recall how many times a month . . . ." *Id* at 112. Therefore, evidence in the record prior to Plaintiff's recent affidavit showed, without contest, that Plaintiff was only supervised by Lt. Metzger on an intermittent basis.

In addition, the record shows that Lt. Metzger only had authority to remove or re-assign Plaintiff's BPT duty when she was directly supervising him, as evidenced by Plaintiff's statements that when he "worked with other Lieutenants . . . everyone knew that I was BPT, so they would automatically put me BPT." *Id* at 173. Plaintiff also stated "[a]s long as the Lieutenants were around, I was safe." *Id* at 175. During this line of questioning Plaintiff reiterated that he could not "recall the exact number" of times Lt. Metzger removed him from BPT duty. *Id* at 171-72. If Lt. Metzger only supervised Plaintiff on and off a few times per quarter, and only had authority to reassign his BPT duties when supervising him, then the record prior to Plaintiff's submission of this most recent affidavit contradicts Plaintiff's current assertion that he was denied or reassigned BPT at least once a week. Due to this contradiction, I

cannot consider the factual allegations regarding the frequency of Lt. Metzger's conduct contained in Plaintiff's affidavit.

Without this statement of frequency from Plaintiff's affidavit, there is nothing in the record to demonstrate that Plaintiff was denied, re-assigned, or removed from BPT during the relevant time period. Of Plaintiff's memoranda and emails that mention his issues securing BPT assignments, only one falls within the 45-day period. E.D.N.Y. L.R. 56.1 Statement ¶ 51, ECF No. 63. However, as discussed in detail below in Section I.b., that memo does not allege any specific incident in which he was denied BPT during the time-period and is otherwise insufficient to sustain a finding of retaliation under Title VII. *Id.* at ¶60.

### b. Plaintiff's Remaining Discreet Act Claims.

Eliminating Plaintiff's factual allegations occurring before August 12, 2016 leaves the following:

(1) On August 13, 2016, Plaintiff emailed Associate Warden Hendrix to allege bullying by a supervisor other than Metzger. *Id* at ¶ 51.

(2) On September 26, 2016, Plaintiff first contacted an EEO counselor concerning his alleged sexual harassment and retaliation. *Id* at ¶ 70.

(3) On September 28, 2016 Plaintiff contacted a number of MDC officials to inquire why he was not being "utilized for BPT Hospital duties" and inquiring whether he was under investigation for any personal or professional conduct. *Id* at ¶ 58.

(4) In September of 2016, Plaintiff's complaint, which had previously been referred to the DOJ, was referred back to the MDC. *Id* at ¶ 65.

(5) One November 8, 2016, Special Investigative Agent Geier interviewed Plaintiff regarding his claims. *Id* at ¶ 66.

(6) On November 26, 2016, Plaintiff completed his last day of employment with the

MDC, departing for a position with the Department of Veteran's Affairs. *Id* at ¶ 63.

In order to state a prima facie claim of retaliation, "a plaintiff must adduce evidence

sufficient to permit a rational trier of fact to find (1) that she engaged in protected activity under

[Title VII], (2) that the employer was aware of this activity, (3) that the employer took adverse

action against the plaintiff, and (4) that a causal connection exists between the protected activity

and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment

action." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010)

(quoting *Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 205-06 (2d Cir.

2006)) (alterations incorporated).

Based on the record properly before this Court, Plaintiff's claim that he suffered an

adverse employment action cannot withstand summary judgment. In support of this claim

Plaintiff argues that; (1) denial of BPT amounts to an adverse employment action, (2) Lt.

Metzger falsely claimed that Plaintiff introduced contraband into the prison and lost his keys

within the facility, and (3) these two rationales in combination constitute an adverse act. Pl.

Opp'n Br. 13-15, ECF No. 59. On the first rationale, Plaintiff is unable to point to any incident in

which he was denied BPT on or after August 12, 2016. Instead, Plaintiff points to his inquiry on

September 28, 2016 as to why he was not receiving more BPT. The undisputed facts make clear

this email "does not allege who denied him the opportunity to perform BPT, when he was denied

the opportunity to perform BPT, or how many times he was denied the opportunity to perform

BPT." E.D.N.Y. L.R. 56.1 Statement ¶ 60, ECF No. 63.  Thus, there is no evidence that such a

denial even occurred during the applicable period, let alone evidence to determine whether a

denial of BPT could qualify as an adverse employment action. Plaintiff's claim is therefore unable to survive summary judgment on these grounds.

Plaintiff's second rationale similarly fails. The claims that Lt. Metzger made false claims that Plaintiff lost his keys and introduced contraband stem from incidents that undisputedly occurred in 2014, well before the August 12, 2016, cutoff. As such, the factual allegations underpinning this rationale are time-barred and cannot be considered as evidence of an adverse employment action. *See* 29 C.F.R. § 1614.105(a)(1).

Finally, Plaintiff's claim that these acts examined together amount to one adverse act cannot withstand summary judgment. Plaintiff is correct that acts which do not amount to an adverse action on their own may, when taken together, satisfy the standard. *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010). However, as there is no evidence properly before this Court to support either of Plaintiff's claims, there is similarly no evidence to support those claims in combination. I therefore recommend that summary judgment be granted as to Plaintiff's discrete act claims.

## II.      Plaintiff's Hostile Work Environment Claims.

In addition to claims based on discreet acts, Plaintiff also claims he was subjected to a hostile work environment on the basis of sex in violation of Title VII. While much of Plaintiff's factual allegations are time-barred as to his discrete act claims, the 45-day period operates differently in claims of hostile work environment. *Tassy v. Buttigieg*, 51 F.4th 521, 531 (2d Cir. 2022). "Because hostile work environment claims by their very nature involve repeated conduct over a long period of time, the Supreme Court explained that, as long as any act contributing to the hostile work environment claim falls within the [relevant] period, 'the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.'"

*Spence v. Bukofzer*, No. 15-CV-6167 (ER), 2017 WL 1194478, at *6 (S.D.N.Y. Mar. 30, 2017) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002)).

In defense of these claims, Defendant argues that: (1) no reasonable jury could determine that Plaintiff was subjected to a hostile work environment and (2) even if Plaintiff's claim could survive summary judgment, Defendant is entitled to summary judgment based on the *Faragher-Ellerth* defense. I will analyze each argument in turn.

### a. Defendant's Hostile Work Environment Claim.

In order to demonstrate a hostile work environment under Title VII "a plaintiff must show that 'the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003) (quoting *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir.2002)). This standard has three components. First, "it is 'axiomatic' that in order to establish a sex-based hostile work environment under Title VII, a plaintiff must demonstrate that the conduct occurred because of [his] sex." *Alfano*, 294 F.3d at 374 (quoting *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir.2001)). Second, the alleged conduct must be "severe or pervasive enough to create an objectively hostile or abusive work environment." *Terry*, 336 F.3d at 148. (internal quotations omitted). Lastly, the "victim must also subjectively perceive that environment to be abusive." *Id.*

### i. Discrimination on the Basis of Sex.

Defendant argues that Plaintiff is unable to show a link between Plaintiff's harassment and his sex because of Plaintiff's numerous written complaints, only one ever directly states that he was experiencing harassment based on his sex. *See* Def. Br. 20, ECF No. 56. It is undisputed that while an employee at the MDC, Plaintiff authored approximately ten emails or memoranda

11

alleging mistreatment by Lt. Metzger and other MDC staff and of these only one explains that Lt.

Metzger sought a romantic relationship with Plaintiff. Def. Br Exhibits D-O, ECF Nos. 58-4-58-

15. However, Defendant's argument does not address multiple instances in Plaintiff's testimony

in which Plaintiff was subjected to disparaging remarks plainly on the basis of sex. During both

tours of duty at the MDC, Plaintiff testified that Lt. Metzger would use slurs typically directed at

both women and gay men whenever Plaintiff would reject her advances. Pl. Opp'n Br. 2-4, ECF

No. 59. Similarly, Plaintiff testified that Lt. Metzger would tell him to "be a man" and question

the size of his genitalia when he refused her. *Id*. In the most extreme alleged incident of

harassment, Lt. Metzger sat on Plaintiff's desk, opened her legs in front of him, and

propositioned Plaintiff for sex. *Id* at 4. When rebuked, Lt. Metzger allegedly disparaged Plaintiff

with such slurs and comments and confiscated his personal items. *Id.* These "sex-specific and

derogatory terms" used by Lt. Metzger and her overt sexual advances could reasonably lead a

jury to conclude that Plaintiff was subjected to harassment based on his sex. *Pucino v. Verizon

Wireless Commc'ns, Inc.*, 618 F.3d 112, 117-18 (2d Cir. 2010).

Furthermore, Plaintiff further alleges sex-neutral behavior that could reasonably be

inferred to be discriminatory based on sex. *Id* at 117. "There is little question that incidents that

are facially sex-neutral may sometimes be used to establish a course of sex-based discrimination-

for example, where the same individual is accused of multiple acts of harassment, some overtly

sexual and some not." *Id* at 118-119. While Plaintiff has occasionally complained of misconduct

by other individuals, Lt. Metzger remained the central figure in the majority of Plaintiff's

allegations. This sex-neutral harassment, such as Lt. Metzger confiscating Plaintiff's personal

items, hyper scrutinizing Plaintiff's performance, and denying or re-assigning his requested BPT

time began after Plaintiff rejected Lt. Metzger's offers for a sexual relationship. Pl. Opp'n Br., 4-

5, 8-9; ECF No. 59. And while circumstantial evidence alone may be sufficient to transform facially sex-neutral harassment into sex-based harassment, the record also contains evidence of statements made by Lt. Metzger herself indicating her behavior was due to Plaintiff rejecting her advances. *Pucino*, 618 F.3d at 117-18. After allegedly locking Plaintiff in a unit by not providing all the necessary keys for Plaintiff's post, Lt. Metzger called Plaintiff stating "don't think I forgot the past and how you played me . . . . I don't take no for an answer," in an apparent reference to Plaintiff's rejections. Pl. Opp'n Br. 9; ECF No. 59. Thus, despite the fact the Plaintiff did not allege sexual harassment in the majority of his complaints, the record contains sufficient evidence for a jury to reasonably conclude that Plaintiff's harassment was due to his sex.

        ii.      *Objective Hostility.*

Demonstrating an objectively hostile work environment is a fact specific inquiry and while the standard "is high, [this Circuit has] repeatedly cautioned against setting the bar too high." *Terry*, 336 F.3d at 148. Courts in this Circuit look to the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id* (internal quotations omitted).

In arguing that Plaintiff has failed to establish an objectively hostile work environment, Defendant again focuses entirely on the contents of Plaintiff's memos. Def. Br. 19-21. Not only do these memos demonstrate a frequency of at least ten instances of alleged harassment by Lt. Metzger against Plaintiff, Defendant's argument ignores other evidence in the record that Lt. Metzger allegedly made an overt sexual proposition to Plaintiff, repeatedly called him sex and sexual orientation-based slurs when he refused, and repeatedly uses both sex-based and sex-neutral forms of harassment against Plaintiff. In a similar case, *Cruz v. Coach Stores, Inc.*, this

Circuit held that a plaintiff had raised a triable question of fact as to her hostile work environment claim where the head of Human Resources frequently used racial slurs and would repeatedly back plaintiff "into the wall" when having conversations with her. 202 F.3d 560, 571-72. The "physically threatening nature of" the conduct in *Cruz* brought the case "over the line separating merely offensive or boorish conduct from actionable sexual harassment." *Id* at 572. Similarly, Plaintiff in this case maintains Lt. Metzger used slurs in referring to him and physically sought a sexual relationship from him by sitting on his desk and spreading her legs despite Plaintiff already declining her advances. Furthermore, the alleged sexual conduct at issue here is, in some degree, more extreme than in *Cruz*, at least so far as Plaintiff here is alleging an overt sexual advance by a supervisor as opposed to physical behavior with sexual subtext. *See id.* Viewing the record in the most favorable light to the nonmoving party, Plaintiff has successfully demonstrated a triable issue of fact as to the objective hostility of his workplace.

### iii.    Subjective Hostility.

Lastly, Defendant's claim that Plaintiff cannot show that he subjectively viewed the environment at the MDC as hostile because he willingly returned and even stated he was happy to do so is without merit. Def. Br. 22; ECF No. 56. The relevant inquiry for determining subjective hostility is whether "the conditions under which [an employee's] tasks must be performed have been altered for the worse." *Terry*, 336 F.3d at 148. Assuming, *arguendo*, that that the environment was indeed the same in 2014 when Plaintiff returned as it was in 2008, that argument does not address the pattern of escalation laid out in Plaintiff's testimony. *See* E.D.N.Y. L.R. 56.1 Statement ¶ 17, ECF No. 63. Not only did Lt. Metzger's most egregious alleged act of sexual harassment occur after Plaintiff returned in 2014, but Plaintiff also clearly demonstrated his subjective awareness of the hostile environment by writing over ten emails or

14

memos requesting ways to avoid working with Lt. Metzger. While only one of these memos

directly alleges sexual misconduct, that inquiry, as discussed above, is wholly separate from

Plaintiff's subjective perception of the environment. I therefore recommend that the Court find

there is sufficient evidence in the record for Plaintiff's hostile work environment claim to survive

summary judgment.

### b. Defendant's *Faragher-Ellerth* Defense.

When facing claims of hostile work environments by employees, employers may have

access to an affirmative defense colloquially referred to as the *Faragher-Ellerth* defense. *See*

*Faragher v. City of Boca Raton*, 524 U.S. 775, 807  (1998); *Burlington Indus., Inc. v. Ellerth*,

524 U.S. 742, 765 (1998). This defense, which absolves employers of liability for the actions of

supervisors, is only available where either: "(1) the employee's supervisor took no tangible

employment action, which involves an official company act, against the employee; or (2) any

tangible employment action taken against the employee was not part of the supervisor's

discriminatory harassment." *Ferraro v. Kellwood Co.*, 440 F.3d 96, 101 (2d Cir. 2006) (internal

quotations omitted). Plaintiff does not argue that the defense is inapplicable to this case on either

ground, and instead argues that the elements of the defense have not been satisfied. Pl. Opp'n Br.

22-23. As such, I presume at this stage that the defense is applicable and proceed to the

substance of the defense.

To satisfy the *Faragher-Ellerth* defense an employer must show: "(1) the employer

exercised reasonable care to prevent and correct promptly any discriminatory harassing behavior,

and (2) the plaintiff employee unreasonably failed to take advantage of any preventive or

corrective opportunities provided by the employer or to avoid harm otherwise." *Ferraro*, 440

F.3d at 101 (quoting *Faragher*, 524 U.S. at 807; *Ellerth*, 524 U.S. at 765) (internal quotations

omitted). Determining whether an employer has exercised reasonable care is a fact-specific

inquiry and while an employer can demonstrate reasonable care by showing it had in place an

antiharassment policy at the time of the employee's employment that fact alone "is not always

dispositive." *Id* at 102. When faced with an actual complaint, how and how quickly that

antiharassment policy is implemented "is another important factor in determining whether a

defendant can satisfy the first prong of its affirmative defense." *Setelius v. Nat'l Grid Elec. 23

Servs. LLC*, No. 11-CV-5528 (MKB), 2014 WL 4773975, at *25 (E.D.N.Y. Sept. 24, 2014).

Plaintiff and Defendant's differing accounts of MDC's response to Plaintiff's March 25,

2016 memos create a clear and genuine issue of material fact which precludes summary

judgment on the first prong of Defendant's *Faragher-Ellerth* defense. Defendant claims that

Plaintiff's only complaint specifically alleging sexual harassment was first made known to the

MDC on May 23, 2016, which was referred to the DOJ for immediate investigation two days

later.[2] E.D.N.Y. L.R. 56.1 Statement ¶¶ 56, 64, ECF No. 63. Defendant however claims that this

complaint was first made on March 25, 2016, via email and the MDC failed to act until May 23.

Pl. Opp'n Br. 7-8, ECF No. 59. While courts in this Circuit have found an employer to act

reasonably where a complaint is acted upon within days, those courts have also found an

employer's delay of one month to interview an employee regarding a complaint precluded a

summary judgment finding on the employer's reasonableness. *Compare Gonzalez v. Beth Israel

Med. Ctr.*, 262 F. Supp. 2d 342, 356-57 (S.D.N.Y. 2003) (granting summary judgment and

---

[2] Plaintiff also argues that many of his previous complaints went unaddressed by MDC management. *See e.g.*, Pl. Opp'n Br. 8, ECF No. 59. However, it is uncontested that that only Plaintiff's March 25, 2016, memorandum specifically mentioned sexual harassment. Rule 56.1 Statement ¶ 54, ECF No. 63. Because "generalized complaints" are insufficient to provide "notice . . . as required to trigger a duty to use reasonable care to respond," the relevant inquiry here is in how the MDC responded once it was on notice of actual sexual harassment, not Plaintiff's more generalized complaints. *See Setelius v. Nat'l Grid Elec. 23 Servs. LLC*, No. 11-CV-5528 (MKB), 2014 WL 4773975, at *25 (E.D.N.Y. Sept. 24, 2014).

finding an employer acted reasonably where a finding of sexual harassment was made within

eleven days of the initial complaint), *with Bennett v. New York City Dept. of Corrections*, 705

F.Supp. 979 (S.D.N.Y. 1989) (declining to grant summary judgment or find an employer acted

reasonably where employer waited four weeks to contact complainant). Thus, whether the first

prong of the *Faragher-Ellerth* defense is satisfied is likely to turn on which version of events is

deemed more credible. While the Defendant may well be correct that the MDC did not receive

notice of the complaint until May of 2016 and acted nearly immediately, that determination is

best left to a jury. As such, summary judgment is inappropriate as to the first prong of the

*Faragher-Ellerth* defense.

## CONCLUSION

For the reasons given, I recommend that the Court GRANT Defendants' motion for

summary judgment as to Plaintiff's discrete act claims and DENY the motion as to Plaintiff's

hostile work environment claim.

## OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil

Procedure, the parties shall have fourteen (14) days from service of this Report and

Recommendation to file written objections. Failure to file timely objections shall constitute a

waiver of those objections both in the District Court and on later appeal to the United States

Court of Appeals. *See Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir.

2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *Tavarez v. Berryhill*,

No. 15-CV-5141 (CS) (LMS), 2019 WL 1965832, at *30 (S.D.N.Y. May 1, 2019); *see also*

*Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**

                                          /s/ Steven L. Tiscione

                                      Steven L. Tiscione
                                      United States Magistrate Judge
                                      Eastern District of New York

Dated: Central Islip, New York
       February 10, 2023